# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| ANAIT I., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Deputy Commissioner for Operations, performing duties and functions not reserved to the Commissioner of Social Security, <br><br> Defendant. | Case No. CV 17-08511-DFM <br><br> MEMORANDUM OPINION AND ORDER |

Anait I. ("Plaintiff") appeals from the Commissioner's final decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] The Commissioner's decision is affirmed and this case is dismissed with prejudice.

## I. BACKGROUND

Plaintiff filed applications for DIB and SSI on April 30, 2013, alleging disability beginning April 1, 2013. See Dkt. 13, Administrative Record ("AR")

---

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

247-59. After being denied initially and on reconsideration, Plaintiff received a hearing before an Administrative Law Judge ("ALJ") on May 6, 2016. See AR 114-15, 146-47, 170-87. The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE"). See AR 11-56.

On July 11, 2016, the ALJ denied Plaintiff's claim. See AR 147-67. The ALJ found that Plaintiff had the severe impairments of degenerative and discogenic disease of the spine and carpal tunnel syndrome (post-right hand release). See AR 154. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> Perform light work . . . with the following limitations: no pushing or pulling with the lower extremities; no more than occasional climbing of ramps or stairs; no climbing ladders, ropes, or scaffolds; no crawling; no more than occasionally balancing; stooping, kneeling, and crouching; must avoid unprotected heights, moving mechanical parts, excessive vibration, and excessive noise; requires the ability to shift position between sitting and standing while remaining on task, up to twice per hour; no more than occasional bilateral handling and fingering; and limited to basic oral communication in English.

AR 156. The ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform such as information clerk, counter clerk, and hostess. See AR 160. Consequently, the ALJ concluded that Plaintiff was not disabled. See AR 160-61.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-7. Plaintiff then sought review in this Court. See Dkt. 1. Plaintiff now moves for judgment on the pleadings. See Dkt. 19 ("Mot."). The Commissioner has filed a combined

opposition and cross-motion for judgment on the pleadings. See Dkt. 20 ("Opp'n").

## II. DISCUSSION

Plaintiff contends that the ALJ (1) failed to develop the record and give proper weight to the various treating sources and (2) improperly found that she could perform other jobs that exist in the national economy. See Mot. at 2.

### A. Development of the Record and Evaluation of Treating Sources

Plaintiff contends that the ALJ should have called a medical examiner to testify at the hearing given the "complexity of the case [and] the length of the adjudication period." Mot. at 2-4.

The ALJ has a "special duty to fully and fairly develop the record to assure that the claimant's interest are considered," even where, as here, "the claimant is represented by counsel." Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (citation omitted). The ALJ's "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

Plaintiff's contention lacks merit. Plaintiff has not shown that the absence of a medical examiner rendered the record ambiguous or inadequate. The ALJ considered the treatment records, testimonial evidence, and state agency physicians' opinions pertaining to the relevant period. See AR 154-59. Plaintiff also overstates the complexity and length of this case, given its average life span (a disability period of three years) and amount of medical records (approximately 200 pages). Plaintiff notes that a prior ALJ agreed to Plaintiff's request for a medical expert, see Mot. at 3, but this is certainly not dispositive about whether a later ALJ was required to do so.

As part of the first issue, Plaintiff briefly references four other alleged errors. First, Plaintiff contends that the ALJ "failed to evaluate chronic pain as

3

a stand-alone disabling factor." Mot. at 4. The applicable regulations, however, state that a claimant's statements about her pain "will not alone establish" disability. 20 C.F.R. §§ 404.1529(a), 416.929(a).[2] In addition, the ALJ properly considered and rejected Plaintiff's allegations of pain based on her activities of daily living, conservative treatment, and "suspicious" behavior.[3] See AR 156-57; see also Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (finding permissible the ALJ's inference that claimant's pain was not as "all-disabling" as reported in light of his conservative treatment).

Second, Plaintiff contends that the ALJ did not consider the necessity of an assistive device. See Mot. at 4. To the contrary, the ALJ noted that there was conflicting evidence regarding Plaintiff's use of a cane: "While examinations indicated [Plaintiff] used a cane or walker at times, other emergency room reports and the consultative examination indicated that she was able to ambulate without a cane." AR 158 (citing AR 391-417, 537-43,

---

[2] Social Security Regulations regarding the evaluation of opinion evidence were amended effective March 27, 2017. Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 804 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Accordingly, the Court applies the versions of the regulations that were in effect at the time of the ALJ's July 2016 decision.

[3] The ALJ noted conflicting findings between a September 2013 consultative orthopedic examination (where Plaintiff continuously moaned, was difficult to examine due to "hyperreactivity to any part being palpitated," exhibited subjective give-way in upper and lower extremities, could only walk without a cane if she bent forward as she walked, had decreased sensation in the lower extremities, and exhibited limited range of motion) and an emergency room report the same month (where she had full range of motion of all extremities, her gait was normal, and her physical examination showed no focal neurological deficits). See AR 157; see also AR 391-93, 399.

553-69). These conflicting opinions provided substantial support to disregard evidence that Plaintiff required a cane. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

Third, Plaintiff states that the ALJ did not state why he did not adopt the opinions of Plaintiff's treating physicians. See Mot. at 4. But Plaintiff does not explain further, and in any event, the ALJ provided specific and legitimate reasons for discrediting Plaintiff's physicians. With respect to Dr. Beno Nersissian, the ALJ found that his extreme limitations were inconsistent with the diagnostic evidence showing no significant nerve root impingement and Plaintiff's relatively conservative treatment. See AR 158; see also Batson v. Comm'r of SSA, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings."). For Dr. Ramin Ganjianpour, the ALJ agreed with his handling and fingering restrictions, but otherwise found his extreme restrictions (similar in type to Dr. Nersissian's) unsupported by the objective evidence and Plaintiff's conservative treatment. See AR 158-59. Finally, the ALJ considered and rejected a statement in Dr. Ayman Salem's records that Plaintiff was "unable to participate in most activities of daily living," AR 529, because it was generalized, vague, and unsupported by the objective evidence, see AR 159. Dr. Salem did not otherwise opine as to Plaintiff's limitations.

Fourth, Plaintiff contends that the ALJ did not consider her reason for pursuing conservative treatment: the high risk of complications and failure associated with back surgery. See Mot. at 4-5. While a conservative course of treatment is not a proper basis for rejecting a claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment, see Carmickle v. Comm'r, SSA, 533 F.3d 1155, 1162 (9th Cir. 2008), there is nothing in the record here to indicate that Plaintiff avoided surgery for these

5

reasons. When asked about her back treatments at the hearing, Plaintiff explained that she wanted to have carpal tunnel release first and had not yet requested approval for back surgery from her insurance. See AR 27-28.

**B.    Step-Five Determination**

At step five of the sequential evaluation process, the ALJ considers the claimant's background and RFC to decide if the claimant can make an adjustment to some other available job. See Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999).

The ALJ may rely on an impartial VE to provide testimony about jobs the applicant can perform despite her limitations. See Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012). The Dictionary of Occupational Titles ("DOT") guides the analysis. See Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007). If the VE's opinion that the claimant is able to work conflicts with the requirements listed in the DOT, then the ALJ must ask the VE to reconcile the conflict before relying on the VE to decide if the claimant is disabled. See id. (citing Social Security Ruling ("SSR") 00-4P, 2000 WL 1898704, at *2 (2000)).

At the benefits hearing, the VE opined that a hypothetical individual with the ALJ's stated limitations could work as a counter clerk, DOT 249.366-010; information clerk, DOT 237.367-018; or hostess, DOT 310.137-010.[4] See AR 44-45. The ALJ asked if those jobs would be available to a person who was "only capable of communicating and understanding basic English, wouldn't be complicated English but basic English." AR 45. The VE answered yes, as "[t]here's no real intense conversations in each of these jobs." Id. In his written decision, the ALJ determined that although Plaintiff was limited to "basic oral

---

[4] The ALJ assigned the wrong DOT code for the hostess position. "This typographical error was harmless." Morales v. Astrue, 300 F. App'x 457, 458 (9th Cir. 2008).

communication in English," AR 156, she could successfully adjust to work in the representative jobs and was not disabled, see AR 160.

Plaintiff argues that the ALJ failed to resolve the conflict between the VE's testimony and the DOT. See Mot. at 5-7. Specifically, Plaintiff contends that the ALJ's finding that she was limited to "basic oral communication in English" is inconsistent with the spoken language requirements of counter clerk, information clerk, and hostess, which require language levels of 2, 3, and 4, respectively.

"For a difference between an expert's testimony and the [DOT]'s listings to be fairly characterized as a conflict, it must be obvious or apparent." Gutierrez v. Colvin, 844 F.3d 804, 808 (9th Cir. 2016). "This means that the testimony must be at odds with the [DOT]'s listings of job requirements that are essential, integral, or expected." Id. "[T]asks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about." Id.

Here, the ALJ did not err. There was no apparent or obvious conflict between the VE's testimony that Plaintiff could perform the job of counter clerk, despite her language limitations, and the requirements of DOT language level 2. According to the DOT, language level 2 requires that an individual be able to recognize 5,000-6,000 words, read at a rate of about 190-215 words per minute, "speak clearly and distinctly with appropriate pauses and emphasis, correct punctuation, variations in word order, using present, perfect, and future tenses." See DOT 249.366-010, 1991 WL 672323. These requirements are not apparently or obviously inconsistent with an individual that possesses "basic oral communication in English," especially given that the VE heard Plaintiff's testimony that she could understand basic English, ask questions at a store, and read and order from English-language menus. See AR 25-26.

Moreover, "it is important to keep in mind that the DOT refers to 'occupations,' not to specific jobs." Gutierrez, 844 F.3d at 807. "'Occupation' is a broad term that includes 'the collective description' of 'numerous jobs' and lists 'maximum requirements' of the jobs as 'generally performed.'" Id. (citing SSR 00-4P, 2000 WL 1898704, at *2-3). Consequently, "not all potential conflicts between an expert's job suitability recommendation and the [DOT]'s listings of 'maximum requirements' for an occupation will be apparent or obvious." Id. at 807-08. Responding to the ALJ's hypothetical question that specifically accounted for Plaintiff's language limitations, the VE noted that based on his experience, "basic English" would be adequate for the listed jobs. AR 45. The ALJ was "entitled to rely on the expert's 'experience in job placement' to account for 'a particular job's requirements,'" Gutierrez, 844 F.3d at 809, and correctly did so here.

To the extent that the ALJ erred in failing to resolve apparent or obvious conflicts about the two other representative jobs, any such error would be harmless. See Molina v. Astrue, 674 F.3d 1104, 1115–21 (9th Cir. 2012) (discussing harmless error principles); see also AR 44 (VE testifying that 300,000 counter clerk jobs existed nationally); Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (finding 64,000 nationwide jobs sufficient).

### III. CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is affirmed and this action is dismissed with prejudice.

Date: March 19, 2019

DOUGLAS F. McCORMICK
United States Magistrate Judge